UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:22-cr-00213(JBA) |
| | : | |
| v. | : | |
| | : | |
| GIOVANNI DONOFRIO | : | August 28, 2023 |

GOVERNMENT'S SENTENCING MEMORANDUM

W.G. texted the defendant, Giovanni Donofrio, "Once we start doing this shit. No talking about it over text or if anyone asks we don't know shit about anything" and "if we sell one clean it completely off. No finger prints." Donofrio responded to these texts with, "U don't even know half the shit I did sinse u last seen me." W.G. then wrote, "And if we get someone to buy meet them somewhere. Don't bring them to your house or my house. I'm just saying. We could also order 100 round mags and 30s." Donofrio responded, "Obvy . . . I'm an arms dealer buddy . . . I just sold an AK for 1200." PSR ¶ 8.

The Government submits this memorandum in aid of the sentencing of the defendant, Giovanni Donofrio, which is presently scheduled for September 1, 2023. ECF No. 30. On June 12, 2023, the defendant pled guilty (ECF Nos. 28-34) to Count One of the Indictment ("Indictment") (ECF No. 1), charging him with Engaging in the Business of Manufacturing and Dealing in Firearms without a License, in violation of 18 U.S.C. §§ 922(a)(1)(A) and 924(a)(1)(D). The Government submits this memorandum in response to the Defendant's Sentencing Memorandum filed on August 21, 2023 ("Defendant's Sentencing Memorandum") (ECF No. 41). The Government respectfully asserts that a guideline sentence of between 10 to 16 months' imprisonment would adequately serve the purposes of sentencing.

I.   BACKGROUND

1

A. <u>The Offense and Relevant Conduct</u>

The basic facts of this offense are summarized accurately at paragraphs 5-12 of the Presentence Report ("PSR") (ECF No. 39). On December 8, 2021, New Haven Police stopped a vehicle that was known to have been involved in a shots-fired incident a few days prior. Investigators found three firearms inside the vehicle. Two of the three firearms were ghost guns, Polymer80 semi-automatic pistols with Glock-made slides. The Glock slides, however, were serialized and investigators tracked their sale history and discovered that Giovanni Donofrio had purchased them only 16 days prior to them being recovered by New Haven Police. PSR ¶ 6.

Investigators obtained a search warrant for Donofrio's home and cell phone. A search of the home revealed ghost gun-making equipment, and such as a Polymer80 box, a power drill and bits, multiple Polymer80 jigs—a tool used to complete the firearm to make it functional, empty packaging for 50 round 9mm drums, multiple slides, an AR15 Carbine Buffer Kit, a slide stop for a Glock, and a Glock grip. PSR ¶ 7.

A search of the defendant's phone revealed many explicit and incriminating texts. For example, on March 20, 2020, Donofrio asked W.G., "Do you need an ffl for mags?" W.G. responds, "Nah ffl is what you need to sell and do shit legally." On May 22, 2020, W.G. asks Mr. Donofrio, "Are you really gonna sell that?" Mr. Donofrio responds, "Oh yeah, I have those 2 sold." On February 26, 2021, Mr. Donofrio asks W.G., "Why don't u do this with me?" W.G. responds, "I mean I could build them and you sell." The conversation continues with W.G. saying, "You did say you was gonna give me one." Mr. Donofrio responds, "Yeah I have 3 more coming in . . . All the ones I have have a name on them."

Importantly, the investigation revealed six shooting incidents from the two polymer80 firearms (ghost guns) that were recovered from the vehicle stopped by NHPD mentioned above.

**2**

These shooting incidents occurred from November 25, 2021 until December 5, 2021. In these incidents, at least four houses were struck by gunfire. Witnesses described vehicles chasing each other and shooting at each other while members of the public were exposed to the gunfire. No injuries were reported. PSR ¶ 10.

II. STATUTORY AND GUIDELINES EXPOSURE

A. Statutory Exposure

Based on his plea of guilty to a violation of 18 U.S.C. §§ 922(a)(1)(A) and 924(a)(1)(D), the defendant faces a maximum term of imprisonment of 5 years, a maximum term of supervised release of three years and a maximum fine of $250,000, and a special assessment of $100. *See* PSR ¶¶ 58-76.

B. Guidelines for the Instant Offense

In the Plea Agreement, the parties agreed that the defendant's base offense level was 12. That level was increased by 2 because the offense involved between 3 and 7 firearms. Two levels are subtracted for acceptance of responsibility, resulting in a total offense level of 12. The parties believed the defendant to fall within Criminal History Category I. See Plea Agreement at 4-5; Doc. 29. A total offense level of 12 and a CHC I, results in a Guideline range of 10 to 16 months' imprisonment. *Id*. Probation agrees with this calculation. PSR ¶¶ 17-25.

C. Parties' Agreement Regarding Departures & Non-Guidelines Sentences

The defendant agreed that he would not appeal or collaterally attack his sentence provided that the sentence does not exceed 16 months of imprisonment, a three-year term of supervised release, a $55,000 fine and a $100 special assessment. Plea Agreement at 6. The parties also agreed that the Guidelines identified in the Plea Agreement were not binding on the Court. Plea Agreement at 3.

LEGAL STANDARD

Following the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220, 243–45 (2005), which rendered the Sentencing Guidelines advisory rather than mandatory, a sentencing judge is required to: "(1) calculate[] the relevant Guidelines range, including any applicable departure under the Guidelines system; (2) consider[] the Guidelines range, along with the other § 3553(a) factors; and (3) impose[] a reasonable sentence." *See United States v. Fernandez*, 443 F.3d 19, 26 (2d Cir. 2006). Under 18 U.S.C. § 3553(a), the sentencing court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." In determining the particular sentence to be imposed, the court shall consider the following factors:

> (1) "[T]he nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct;
> >
> > (C) to protect the public from further crimes of the defendant; and
> >
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established [in the Sentencing Guidelines];
>
> (5) any pertinent policy statement [issued by the Sentencing Commission];
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense."

18 U.S.C. § 3553(a). The Second Circuit reviews a sentence for reasonableness. *See Booker*, 543 U.S. at 260–62. The reasonableness standard is deferential and focuses "primarily on the sentencing court's compliance with its statutory obligation to consider the factors detailed in 18 U.S.C. § 3553(a)." *Id.*

III. DISCUSSION

Applying the relevant factors to this case, the Government submits the following for the Court's consideration.

A. No Departures or Variances Apply

The defendant seeks a departure or variance on three separate grounds: his lack of criminal history, his youth, and his personal history and characteristics. None of these departures or variances apply and the Court should not depart or vary on these grounds.

First, his lack of criminal history is adequately taken into account through his criminal history calculation. Someone, like Mr. Donofrio, with no criminal history, receives 0 points. An individual with 0 points is criminal history category I. Both parties agree that he is CHC I. As such, his lack of criminal history has already been factored into the applicable Guideline Range. Moreover, the Sentencing Commission has recently reviewed the criminal history calculation for "zero point offenders." Effective November 1, 2023, the Guidelines will provide a 2-level reduction for zero point offenders. An exception to the two-level reduction is for offenses where the defendant possessed, transferred, sold, or otherwise disposed of a firearm. Accordingly, even under the new Guidelines, Mr. Donofrio would not receive a reduction as it is not applicable in this case. It would similarly not make sense for him to receive a variance on these grounds.

Similarly, no departure or variance should be granted based on Mr. Donofrio's age. The defendant argues that "[t]he failure to think through the potential consequences of his

5

misconduct, both to himself and to the safety of the community, is a clear example of delayed maturation of those 'areas of the brain that govern impulse control, planning, and foresight of consequences." Def. Mem. At 9.  Mr. Donofrio's crime, however, is not one of impulse.  It was not a one-off crime where he made a single bad decision.  This is a crime that was planned, thought out, discussed with others and ultimately executed.  It is also a crime that took time.  Mr. Donofrio had to drill and use tools to transform an Polymer80 kit into an operable firearm.  In his text messages, he talks about waiting for parts to come be delivered.  This was not a crime he decided to do on the spot or out of impulse.  It was a crime he chose to commit in the first instance, and then repeatedly chose to recommit when he sold every other gun over a period of many months. Accordingly, his age should not provide a basis for a departure or variance.

    B. <u>History and Characteristics of the Defendant, Promote Respect for the Law and General and Specific Deterrence</u>

Mr. Donofrio did not need to get involved in criminal activity—he *chose* to get involved. Mr. Donofrio did not need money as he had multiple jobs at the time he committed this offense. PSR ¶¶ 50-51.  He did not have extensive expenses and, in fact, showed a significant positive net monthly cash flow. PSR ¶ 55.  The evidence suggests that Mr. Donofrio became involved in this criminal activity for status.  The text messages obtained from his phone show various instances of Mr. Donofrio bragging about selling guns.  The text messages also show him referring to himself as an "arms dealer," and bragging that his friend did not know "half the shit [he] did sinse [the friend had] last seen [Donofrio]."  The two individuals also engaged in a discussion of how they can sell firearms without getting caught by police.  The evidence shows that Mr. Donofrio wanted to sell guns the wrong way.  He wanted to sell guns without obtaining a license. In short, the evidence shows that Mr. Donofrio wanted to sell guns criminally.  These texts show

**6**

a clear lack of respect for the law. The Government respectfully submits that only a Guideline sentence would promote adequate respect for the law in this case.

Moreover, Mr. Donofrio was clearly under the impression that if he could brag to people about being an arms dealer, then he would receive some type of benefit from that. In other words, Mr. Donofrio wanted to *criminally* deal firearms because it would provide him with monetary profit, but also a social benefit. The perception that criminally dealing ghost guns or firearms is cool, needs to be deterred. The sentence imposed by the Court must provide adequate deterrence to members of the public who are so inclined to commit identical or similar offenses. The sentence imposed must convince others who may be inclined to commit similar conduct that it is not worth it. It is necessary that the sentence imposed not only deters Mr. Donofrio but also the public from perceiving this offense as socially beneficial. The Government respectfully asserts that a non-custodial sentence would work directly against this goal and that only a Guideline sentence would serve the dual purposes of deterrence.

<u>Seriousness of the Offense</u>

Violent crime is a major problem in this state. Mr. Donofrio sold guns that were involved in a daytime shooting. Two vehicles were involved in the shooting and shots were fired recklessly from one individuals inside one vehicle to the other in a residential area. A video of the exchange was captured showing innocent bystanders on the sidewalk at the time of the shooting. The video depicts a woman pulling a very young girl away from shooting to avoid injuries. Mr. Donofrio sold ghost guns involved in that shooting. He sold guns that added to the violent crime that occurs in this state. The sentence imposed must adequately reflect the seriousness of this offense. Respectfully, only a Guideline sentence could adequately reflect the seriousness in this case.

IV.     CONCLUSION

Considering the nature of his offense and the other factors outlined in § 3553(a), the Government respectfully asserts that a sentence between 10 to 16 months' imprisonment would adequately serve the purposes of sentencing.

                    Respectfully submitted,

                    VANESSA ROBERTS AVERY
                    UNITED STATES ATTORNEY

                    */s/Brendan Keefe*
                    BRENDAN KEEFE
                    ASSISTANT UNITED STATES ATTORNEY
                    Federal Bar No. ct28689
                    Office of the United States Attorney
                    157 Church Street, 25th Floor
                    New Haven, CT  06510

## C E R T I F I C A T I O N

  I hereby certify that on August 28, 2023, the foregoing Memorandum was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

              */s/Brendan Keefe*
              BRENDAN KEEFE
              ASSISTANT UNITED STATES ATTORNEY